UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JACOB ANCHERIL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:06-cv-1019 (JCH) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF MENTAL | : | |
| RETARDATION, | : | |
| Defendant. | : | MAY 30, 2008 |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 18) AND PLAINTIFF'S MOTION TO STRIKE (DOC. NO. 21)**

**I.  INTRODUCTION**

Plaintiff, Jacob Ancheril, brings this claim against the defendant, Connecticut Department of Mental Retardation ("DMR"), alleging violation of his rights pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000 et seq.  Plaintiffs was not promoted and was also put on administrative leave, and eventually terminated from his employment with DMR.  He alleges that these actions were taken because of his race or national origin, or alternatively in retaliation for complaints he made of discrimination.  DMR moves for summary judgment on all of Ancheril's claims.

**II.  FACTS**

In January 2003, Jacob Ancheril began working at the Business Office of the Connecticut Department of Mental Retardation ("DMR") in Farmington, CT as a Financial Clerk..[1]  On November 9, 2003, Ancheril submitted a resume and application

---

[1] Ancheril denies that he began at this office in January, asserting in his Rule 56(a)(2) statement that he was transferred in July 2003.  See Pl.'s Rule 56(a)(2) Statement of Facts

for two open positions as a Fiscal Administrative Assistant at DMR. He was not promoted to either position.

On March 23, 2004, Ancheril filed a written complaint with the DMR Affirmative Action Office claiming that between July and December of 2003 his co-workers created a hostile work environment for him based on his race, sex, and national origin, and that they sexually harassed him. In that complaint, Ancheril made several allegations about his coworkers including that: he overheard one of them refer to him as "the Indian man;" that he overheard two coworkers joke in a hallway that he should marry his co-worker named Kathy; that his coworkers gave him a chocolate muffin on December 19, 2003 that caused him to have stomach cramps, trouble urinating, and passing a bowel movement; that he overheard his coworker say on December 19, 2003, "We have to nail this man;" that on Monday December 22, 2003, he noticed that his work area was very "moist" and found that someone had unlocked his desk drawer, and put in a tube

---

("Pl.'s 56(a)(2) Stat.") at ¶ 3. However, Ancheril supplies no cite to any evidence in the record to support his denial. Local Rule of Civil Procedure 56(a)(2) requires that "the papers opposing a motion for summary judgment shall include a document entitled 'Local Rule 56(a)(2) Statement,' which states in separately numbered paragraphs . . . whether each of the facts asserted by the moving party is admitted or denied." Loc. R. Civ. P. 56(a)(2). Local Rule 56(a)(3) provides that,

> Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in the evidence admitted in accordance with Rule 56(a)(1) or in the Court imposing sanctions, including . . . when the opponent fails to comply, an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law.

Loc. R. Civ. P. 56(a)(3). Given that plaintiff has failed to provide "specific citations" to support almost all of the factual assertions in his Rule 56(a)(2) Statement, any facts asserted by DMR in its Rule 56(a)(1) Statement that are supported by evidence, and the denial of which is not supported by citations to evidence in the record in Ancheril's Rule 56(a)(2) Statement, will be deemed admitted by the court.

of petroleum jelly which had been refilled with something else; also on December 22, 2003, he ate a cookie offered to him by a coworker, which he later overheard his coworkers say contained "s.k.," which would cause him not to have "any more sex life;" later that same day he had a cough, breathing trouble, sneezing, and numbness in his chest and hands and went to the emergency room where he was treated for high blood pressure; on January 21, 2004 he overheard a co-worker say, "Did Jacob know that he has been poisoned by Bonnie?;" on February 18, 2004, he overheard a co-worker say, "yes, he is here, none of us talk to him any more;" and at some other point he overheard a coworker explain to a visitor that, "we gave him sex killer, so he won't be able to make love with [his wife] any more. So let's see how long they will stay married." Affirmative Action Complaint Form, Ex. 6 to Def.'s Mem. in Supp. of Motion for Summ. Judg. ("Def.'s Mem.") (Doc. No. 18).

On March 31, 2004, Ancheril reported to police that someone had put a substance on his fan and that he had smelled chemical odors in his office the previous day. The police evacuated the building and eventually determined that it was a false alarm. As a result of the March 31, 2004 incident, Ancheril's supervisor, Gerald Daley, filled out a "Report of Occupational Injury" to the Connecticut Department of Administrative Services Personnel Division reporting Ancheril's claim of a burning sensation his hands and face. See Report of Occupational Injury, Ex. 9 to Def.'s Mem. In that report, Daley noted that the cause of the injury was "paranoid ideations," based on the Farmington Police Report of the incident. Id.

The next day, April 1, 2004, Ancheril reported a suspicious white substance on an office chair to his managers, who notified the police. Ancheril reported that his right

3

hand began to burn prior to discovering the substance. A police investigation was undertaken of plaintiff's coworkers based on Ancheril's allegations. Ancheril was taken to the hospital, where a social worker reported to the police that Ancheril was, "suffering the beginnings of Paranoid Schizophrenia and has some paranoid ideations and possible auditory hallucinations . . . ." Farmington Police Incident Report at 3, Ex. 11 to Def.'s Mem.

On April 5, 2004, the manager of DMR's Affirmative Action Program informed Ancheril that he had reviewed his complaint and was referring it to the Human Resources Office. On May 27, 2004, Ancheril filed a complaint with the Connecticut Commission on Human Rights & Opportunities ("CCHRO"), alleging that he was sexually harassed on March 31, 2004, retaliated against for filing a civil rights complaint on April 1, 2004, and harassed on April 1, 2004 because of his national origin, sex, and previous complaint about discriminatory conduct. In this new complaint, Ancheril reiterated his previous allegations and added that he coworkers had started to retaliate against him for filing the Affirmative Action Complaint. Specifically, he complained that his coworkers sang happy birthday to him and another coworker on the same day even though his birthday had already passed, and added allegations about the powders on his fan and office chair.

Ancheril was out of work between July 21, 2004 and August 23, 2004. His complaints started again on October 21, 2004, when he warned a coworker, out of concern for her safety, that there was "ground glass on his mouse." That same day, the DMR placed Ancheril on administrative leave because "in recent weeks [Ancheril had] made several reports alleging harassing and potentially physically harmful actions

4

directed toward [him] by fellow employees." Letter from Gerald Daley to Jacob Ancheril at 1, Ex. 19 to Def.'s Mem. The DMR placed Ancheril on administrative leave pending investigation of his allegations by the Farmington Police and DMR. DMR made an appointment for Ancheril to see Dr. Jay Lasser at the Center for Work Stress Reduction in Farmington on November 16, 2004, for a mandatory medical and physical evaluation to determine if he was fit to return to duty. On November 29, 2004, Dr. Lasser issued a "Fitness for Duty Evaluation" in which he concluded that Ancheril posed no physical threat to his coworkers but that he was "clearly unable to perform the duties of his occupation . . . [as] a direct result of his worsening illness." Fitness for Duty Evaluation, Ex. 21 to Def.'s Mem.

On December 22, 2004, Daley notified Ancheril of Lasser's report and informed him that, in order to be eligible to return to work, he was required to enter and continue psychiatric treatment for a minimum of two months until his doctor and Lasser found him fit for duty. On January 26, 2005, Daley wrote to Ancheril again, warning him that he would be dismissed if he did not request medical leave and begin treatment. Ancheril never requested medical leave or indicated that he was seeking treatment. Daley wrote to Ancheril again on February 9, 2005, informing him that he was on unauthorized leave and notifying him that a Loudermill hearing would be held on February 18, 2005. On March 23, 2005, Ancheril was terminated. He grieved his termination; the grievance was denied. He appealed the denial of his grievance to arbitration; the arbitrator found that he had been terminated for just cause. On September 30, 2005, Ancheril's CCHRO complaint was dismissed for lack of reasonable cause.

5

## III. DISCUSSION

### A. Ancheril's Motion to Strike

As a preliminary matter, the court turns to an evidentiary issue. Ancheril moves to strike defendant's Exhibits 3-5, 7-12, 15, 15a, 18, 20, 21, and 30-34 because these exhibits "contain inadmissible hearsay, are not authenticated, and are more prejudicial than probative." Pl.'s Mem. in Supp. of Mot. to Strike at 1 (Doc. No. 22). DMR argues that every exhibit Ancheril moves to strike, with the exception of the newspaper article that is DMR's Exhibit 10, is a business record and thus admissible as an exception to the general prohibition on hearsay. See Def.'s Mem. in Opp. of Mot. to Strike at 2 (Doc. No. 26). DMR agrees to withdraw Exhibit 10. DMR also argues that Ancheril identified the letter that is DMR's Exhibit 4 at his deposition (see Depo. of Ancheril at 29) and admitted in his 56(a)(2) statement that he wrote the letter which is DMR's Exhibit 34. Id. at 1. In support of its contention that these exhibits are business records, DMR supplies the Affidavit of Gerald Daley, who attests that "DMR did indeed, maintain each and every one of these records in its files. More, specifically each document and perhaps, copies were maintained by DMR as records kept in the ordinary course of business." Daley Affidavit at ¶ 6, Ex. 1 to Def.'s Mem. in Opp. to Pl.'s Mot. to Strike.

Hearsay, as defined by the Federal Rules of Evidence, is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The court finds that the contents of the documents Ancheril moves to strike are submitted to show the state of mind of Ancheril's supervisors in making the decisions to put him on administrative leave and ultimately to terminate his employment. Therefore, the

exhibits Ancheril moves to strike were not submitted to prove the truth of the matters asserted therein and are not inadmissible hearsay. Ancheril's Motion to Strike is denied.

      B.      Ancheril's Title VII Race and National Origin Discrimination Claim

Analyzing whether DMR subjected Ancheril to intentional discrimination must be done under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir. 2001). The plaintiff is first required to establish a prima facie case of discrimination. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). A prima facie case for disparate treatment is established by showing that: 1) the plaintiff is a member of a protected class; 2) the plaintiff was qualified for his job; 3) the plaintiff suffered an adverse employment action; and 4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>see also</u> <u>Burdine</u>, 450 U.S. at 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. <u>See</u> <u>id.</u> Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination drops out. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment action. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143, (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason

offered by the defendant was not the employer's true reason, but was a pretext for discrimination.  Id.

Ancheril's claim to intentional discrimination under Title VII fails because he does not demonstrate a prima facie case for race or national origin discrimination under McDonnell Douglas.  Specifically, Ancheril fails to show that there is a disputed issue of material fact on which a reasonable jury could conclude that any adverse action he suffered was "under conditions giving rise to an inference of discrimination."  McDonnell Douglas, 411 U.S. at 802; see also Burdine, 450 U.S. at 254.  Ancheril argues that such an inference can be drawn because "all reasonable persons of plaintiff's background" would find "comments about sex and females offensive," and plaintiff's supervisors and coworkers were "well aware of his race and value system."  Pl.'s Mem. in Opp. to Mot. for Summ. Judg. at 4 (Doc. No. 23).  However, at no point, in his Memorandum in Opposition to the instant motion or in his Statement of Material Facts pursuant to Local Rule of Civil Procedure 56(a)(2), did Ancheril direct the court to a single piece of evidence in the record to support either the claim that people of Ancheril's background are particularly sensitive to sexual comments or that his supervisors and coworkers were aware of this sensitivity.[2]  Similarly, Ancheril offers the court not a single cite to evidence in the record to support his claim that he "was counseled when a Caucasian female complained about him, while no other employee for the department received any counseling for their behavior."  Pl.'s Mem. in Opp. at 5.  Absent any factual basis, no reasonable trier of fact could make an inference that Ancheril was discriminated

---

[2] See discussion of requirements under Local Rule 56 infra at page one, footnote one.

against because of his race or national origin on the basis of this assertion.

Ancheril further argues that an inference that he was discriminated against based on his race and/or national origin could be drawn from the fact that he was "referred to as the "Indian man" and questioned about what his national origin was repeatedly." Pl's Mem. in Opp. at 4. Again, at no point in his memorandum or Rule 56(a)(2) Statement does Ancheril point the court to any evidence in the record to support his assertion that anyone ever questioned what his national origin was, much less that they did so repeatedly. Though Ancheril never cited the record to the court, the court is aware that in his Affirmative Action Complaint, Ancheril complained that he overheard a caseworker in his department refer to him as "the Indian man." Affirmative Action Complaint at 2, Ex. 6 to Def.'s Mem. Even drawing all inferences in favor of Ancheril, the court finds that no reasonable trier of fact could conclude on the basis of this one isolated comment by a coworker that any adverse actions that Ancheril suffered were due to his race or national origin. See e.g. Kirsch v. Fleet Street, Ltd. 148 F.3d 149, 162 (2d Cir.1998)("'stray' remarks in the workplace by persons who are not involved in the pertinent decisionmaking process" do not suffice to establish inference of discriminatory animus). Therefore, DMR's Motion for Summary Judgment as to Ancheril's claim for intentional discrimination under Title VII on the basis of his race or national origin is granted.

    C.    Ancheril's Hostile Work Environment Claim

To prevail on a hostile work environment claim under Title VII, a plaintiff must show that the complained of conduct "(1) is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would fine hostile or abusive; (2)

9

creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiffs [race or national origin.]" Patane v. Clark, 508 F.3d 106, 113 (2007) (internal quotations omitted). Determining whether the work environment was objectively hostile is accomplished by examining the totality of the circumstances. Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999).

Ancheril's argument in support of his hostile work environment claim is exactly the same as his argument that he was intentionally discriminated against because of his race or national origin. See Pl's Mem. at 9 ("Plaintiff relies on his arguments set forth above in requesting that summary judgment also be denied as to this claim."). Therefore, Ancheril's claim that DMR caused or allowed him to work in a hostile work environment because of his race or national origin fails because no reasonable trier of fact could conclude that any conduct Ancheril complained of was related to his race or national origin. As such, DMR's Motion for Summary Judgment as to Ancheril's hostile work environment claim is granted.

    D.    Ancheril's Retaliation Claim

The McDonnell Douglas burden-shifting analysis applies to a plaintiff's claim of retaliation. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003). Under this framework, a plaintiff makes a prima facie showing of retaliation by establishing "participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and a causal connection between the protected activity and the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir.1995)).

Within the context of Title VII claims, a " 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.2000) (citing 42 U.S.C. § 2000e-3). Once a plaintiff has satisfied his prima facie burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for its action. See Feingold v. New York, 366 F.3d 138, 157 (2d Cir.2004). The burden then shifts back to the plaintiff "to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001).

For the purposes of deciding this motion, DMR concedes that the DMR Affirmative Action Complaint Ancheril filed on March 23, 2004 and the CCHRO complaint filed on May 27, 2004, constitute protected activity. See Def.'s Mem. at 13.

Ancheril claims that in retaliation for these protected acts, he was denied a promotion, placed on administrative leave, forced to undergo a psychiatric evaluation, and terminated from his employment. Assuming, arguendo, that each of these constitutes an adverse employment action, Ancheril's claim for retaliation fails because he fails to demonstrate that there was a causal connection between his complaints and the adverse actions taken against him.

Ancheril argues that a causal connection between his protected acts and the actions taken against him is demonstrated by their temporal proximity. See Pl.'s Mem. at 8. A plaintiff can show a causal connection by demonstrating that his termination occurred soon after the protected activity. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996). In order to prove a causal connection in this manner, the

temporal proximity must be "very close." See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (citing cases holding that gaps between protected activity and adverse employment action as short as three or four months are insufficiently close to prove causation).

Reviewing the undisputed time line of events in this case, the court concludes that no reasonable trier of fact could find that temporal proximity would support a conclusion that DMR retaliated against Ancheril. Starting with one of the positions Ancheril did not receive in promotion, there is evidence before the court that the position was filled December 26, 2003, see email from Daimar Ramos confirming 12/26/03 start date, Ex. 34 to Def.'s Mem., before either of Ancheril's protected acts occurred. Therefore, the denial of that position could not have been in retaliation. Next in the sequence of Ancheril's claimed adverse actions was DMR placing Ancheril on administrative leave on October 21, 2004. That was followed by Ancheril's termination on March 23, 2005. Finally, DMR asserts that it did not fill the second position Ancheril applied for until 2006, after his termination.[3] Ancheril's protected acts took place on March 23, 2004, and May 27, 2004. No reasonable trier of fact could conclude that a five month gap between Ancheril's last protected activity and his being put on administrative leave could support an inference that there was a causal connection

---

[3] The court notes that DMR's only evidence to support its claim is its own answer to a Request for Interrogatories, see Ex. 35 at 8, to Def.'s Mem., and the print out of personnel pages showing that two different employees were assigned to position 18975 in 2006, see Ex. 34 to Def.'s Mem. Although this evidence is admittedly sparse, the court finds that it is sufficient to support DMR's contention that the second position Ancheril applied for was not filled until 2006. The court also notes that Ancheril does not in any way deny DMR's claim that this position was not filled until 2006 (see Pl.'s Stat. of Mat. Facts at 57 and Disputed Issues of Material Fact), nor does he offer any evidence to the contrary.

12

between his complaints and the subsequent complained of actions.[4]

Additionally, DMR has demonstrated that it had a legitimate, non-discriminatory reasons for putting Ancheril on administrative leave and eventually terminating him. The record before the court shows that Ancheril twice called the police to his place of employment causing it to be evacuated, alleging that he had been harmed by co-workers; in both instances his claims were unsubstantiated. On one of those instances, DMR received the police report relating that a medical professional found him delusional. Furthermore, Ancheril was eventually terminated after being repeatedly put on notice and affording the opportunity to be heard. No reasonable trier of fact could conclude, based on the evidence before the court, that DMR has failed to demonstrate a legitimate, non-discriminatory basis for suspending, and then terminating, Ancheril's employment. As such, DMR's Motion for Summary Judgement as to Ancheril's claim for retaliation under Title VII is granted.

## IV.    CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Strike (Doc. No. 21) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED. The clerk is directed to close the case.

---

[4]Ancheril argues that DMR "admits" that "the reason for the administrative leave is because plaintiff complained about harassment by co-workers," based on the contents of the letter informing Ancheril that he was being placed on Administrative leave. See Pl.'s Mem. at 8; Letter from DMR, Ex. 19 to Def.'s Mem. The letter states that, "the reason for [putting Ancheril on administrative leave] was that in recent weeks you have made several reports alleging harassing and potentially physically harmful actions directed toward you by fellow employees." Letter from DMR, Ex. 19 to Def.'s Mem. At no point does Ancheril argue that these complaints constituted protected activity. Furthermore, at no point does Ancheril argue that these complaints were taken to "protest or oppose statutorily prohibited discrimination." Cruz 202 F.3d at 566. The court concludes that Ancheril's complaints about his co-workers, which caused him to be put on administrative leave, were not protected activity.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 30th day of May, 2008.

                                           /s/ Janet C. Hall
                                           Janet C. Hall
                                           United States District Judge